IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VENSON M. SHAW and<br>STEVEN M. SHAW,<br><br>Plaintiffs,<br><br>v.<br><br>BROADCAST.COM, INC.,<br>REALNETWORKS, INC., and<br>MICROSOFT CORPORATION,<br><br>Defendants. | § § § § § § § § § § § § | 3:98-CV-2017-P |

## MEMORANDUM OPINION AND ORDER

Now before the Court are Defendant Microsoft Corporation's Motion for Summary Judgment of Non-Infringement and Defendant Yahoo! Inc.'s Motion for Summary Judgment, both filed February 14, 2005. Plaintiffs Venson M. Shaw and Steven M. Shaw filed a Response to both Motions on March 7, 2005. Defendant Microsoft Corporation filed a Reply on March 22, 2005. After a thorough review of the briefing, the summary judgment evidence, the case file, and the applicable law, the Court GRANTS Defendants' Motions.

### I.   Background and Procedural History

This is an action for patent infringement brought by Venson M. Shaw and Steven M. Shaw (the "Shaws"). The Shaws are the owners of the United States Patent No. 5,611,038 ("the '038 patent") issued March 11, 1997, entitled "Audio/Video Transceiver Provided with a Device for Reconfiguration of Incompatibility Received or Transmitted Video and Audio Information."

(Special Master's Report and Recommendation at 11.) The '038 patent describes and claims a system and method for the efficient transmission of streaming media– video, audio or both– over a telecommunications network. (*See* Def. Microsoft's App. at 1-87.) At the center of the system, and the claims, is a "controller." (*See id.* at 85.) The specific requirements of claimed controller are set forth in claim 1 of the '038 patent, which reads as follows:

> 1. A controller for operating a plurality of video and audio information production devices, based upon video and audio information supplied to, or received from a telecommunications network provided with a plurality of network equipment, comprising:
> an input/output device for receiving and transmitting video and audio information to and from the telecommunications network on a real time basis, said input/output device continuously monitoring run time status and condition changes of said telecommunications network and dynamically controlling and adjusting on a real time basis corresponding network bandwidth utilization by said video and audio information prior to immediately transmitting all of said video and audio information to said telecommunications network;
> processor means connected to said input/output device for processing video and audio information supplied to, or received from said input/output device, said processor means including means for recognizing and processing a plurality of mutually incompatible video and audio coding algorithms for information received from, or supplied to said telecommunications network;
> reconfiguration means connected to said processor means for standardizing and reconfiguring the video and audio information according to a selective internal file format which is universally compatible with any coding algorithms received from, or supplied to the telecommunication network, said reconfiguration means further performing scalable internal data reformatting among incompatibly received or transmitted video and audio information; and
> interface devices for direct communication between said controller and the video and audio information production devices, said interface devices receiving information transmitted by the video and audio information production devices and transmitting information from said controller to the video and audio information production devices, including the encoded video and audio information which are universally compatible with the video coding algorithms produced by said reconfiguration means.

(*Id.* at 85.)

In this action, the Shaws assert the '038 patent against Yahoo! Inc.[1] ("Yahoo") and Microsoft Corporation ("Microsoft") (collectively "Defendants"). The patent was also asserted against RealNetworks, Inc. ("RealNetworks"), but on January 3, 2003, the Court dismissed Plaintiffs' action against RealNetworks with prejudice pursuant to a Stipulation of Dismissal with Prejudice. (Order of 1/03/03.) The Shaws' remaining allegations are that the following products infringe on claims 1 and 10 of the '038 patent: Microsoft's NetShow software, Microsoft's Windows Media software, Media Center PC, Portable Media Center, and Microsoft's NetMeeting software. (App. at 184-208.) The Shaws base their infringement allegations on three different theories: direct infringement under 35 U.S.C. § 271(a); contributory infringement under 35 U.S.C. § 271(c); and inducing infringement under 35 U.S.C. § 271(b).

On January 17, 2001, Jerry R. Selinger was appointed Special Master ("SM") for claim construction. On December 27, 2002, the SM issued his Report and Recommendation (the "SMR"), explaining and defining the claim language, and on September 30, 2003, the Court adopted the SMR. (Order of 9/30/03.)

Defendants now move for summary judgment of non-infringement.

## II. Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute about a material fact is

---

[1] Yahoo! was formerly known as Broadcast.com, Inc.

"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue of fact for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323. The moving party may support its motion for summary judgment by submitting evidence in an attempt to negate an essential element of the non-movant's claim or by pointing out that there is no evidence to support an essential element of the non-movant's claim. *Id.* at 322.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson*, 477 U.S. at 248. He must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Anderson*, 477 U.S. at 248-50; *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). When the non-movant fails to provide a response identifying the disputed issues of fact,

the Court is entitled to accept the movant's description of the undisputed facts as prima facie evidence of its entitlement to judgment. *Eversly v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988).

Additionally, in order to withstand a no-evidence motion for summary judgment, the non-movant must present sufficient evidence to establish each element of his claim on which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. The Supreme Court has provided that the purpose of summary judgment is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). Hence, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Id.* at 322-23.

### III. Patent Infringement

Under 271(a) of the Patent Act, liability for direct infringement may be imposed on any person who without permission of the patentee "makes, uses, offers to sell, or sells any patented invention . . . within the United States." 35 U.S.C. § 217(a). The rights granted to a patentee are defined by the patent's claims. *Markman v. Westview Instruments*, 517 U.S. 370, 373 (1996). In determining whether an accused product falls within the scope of the claims, a two step analysis is required. *Id.* at 384. First, the claims of the patent must be construed as a matter of law to determine their scope and meaning. *Id.*; *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). Second, a factual determination must be made as to whether the properly construed claims read on the accused product. *Markman*, 517 U.S. at 384; *Allen Eng'g Corp.*, 299 F.3d at

1344; *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 974 (Fed. Cir. 1999). In the present case, the claims were construed in the SMR, and the construction therein is no longer challenged. Therefore, the Court must proceed to determine whether the construed claims read on the accused products. As this determination is a question of fact, summary judgment of non-infringement may only be granted only if "no reasonable jury could [find] infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).

Direct infringement can be proven by showing that the patent is either literally infringed or infringed under the doctrine of equivalents. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318, 1326 (Fed. Cir. 2004). To support a finding of literal infringement, the patentee must establish that "every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000) (citing *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). Where one or more elements of the claim are not literally present in the accused product, infringement may be proven under the doctrine of equivalents. *Eagle Comptronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002). In applying the doctrine of equivalents, the court must consider whether the accused product "contain[s] elements that are identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). Generally, an element of the accused product is "equivalent" to an element of the patented product if it performs substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 605 (1950); *see also Schoell v. Regal*

*Mar. Indus., Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001).

Contributory infringement or inducing infringement can only occur where there is an underlying act of direct infringement. *Linear Tech. Corp.*, 379 F.3d at 1326.

## IV. Discussion

### A. Defendant Yahoo's Motion

Defendant Yahoo asserts that Plaintiffs' allegations of patent infringement against Yahoo are "exactly coextensive" with Plaintiffs' allegations against Defendant Microsoft and former Defendant RealNetworks. (Def. Yahoo's Mot. at 1.) Yahoo explains that Plaintiffs allege Yahoo infringes by using the accused products of Microsoft and RealNetworks. (*Id.*) Hence, Yahoo contends that the dismissal with prejudice of all claims against RealNetworks necessarily dismissed all infringement claims against Yahoo relating to Yahoo's use of RealNetworks' products. (Def. Yahoo's Mem. at 2-3.) Plaintiffs agree with this contention, and consequently, they dismiss their claims against Yahoo, which relate to Yahoo's use of RealNetworks' products. (Pls.' Br. at 1 n.1.)

With regard to Plaintiffs' remaining claims against Yahoo– those that relate to Yahoo's use of Microsoft's products– Yahoo asserts that Yahoo cannot be held to infringe absent a finding of infringement as to Microsoft. (Def. Yahoo's Mem. at 3.) Yahoo further asserts that Microsoft is entitled to summary judgment for the reasons stated in Microsoft's Motion. (*Id.*) Plaintiffs do not dispute that Yahoo cannot be held to infringe absent a finding of infringement as to Microsoft. (*See* Pls.' Br. at 1 n.1.) However, Plaintiffs do challenge Microsoft's entitlement to summary judgment. (*Id.*) Therefore, the Court proceeds to determine Microsoft's Motion.

### B. Defendant Microsoft's Motion

As a preliminary matter, the Court notes that the parties have focused their arguments on

claim 1 of the '038 patent. This is because claim 10 contains the limitations of claim 1 plus additional limitations, and as a result, claim 10 cannot be infringed if claim 1 is not infringed. (Def. Microsoft's Mem. at 8; *see* Pls.' Br. at 2-4.) Accordingly, the Court focuses its analysis on claim1 of the '038 patent.

Defendant Microsoft supports its motion, first, by pointing out that there is no evidence to support specific elements of the Plaintiffs' claims and, second, by submitting evidence in an attempt to negate essential elements of the Plaintiffs' claims. In support of its "no evidence" argument, Microsoft asserts that in the Shaws' Responses to Interrogatories, the Shaws have (1) failed to apply the controlling claim construction, (2) failed to address all of the claim limitations, and (3) failed to support conclusory statements in a claim chart provided as a response. (Def. Microsoft's Mem. at 13-18.) More specifically, Microsoft asserts that the Shaws have no evidence that the accused products have elements which are the same or equivalent to any of the following elements of claim 1 (as construed by the SM): (a) the "plurality of video and audio information production devices," (b) the clock or clock cycles for the "continuous monitoring" by the input/output device, (c) the "mutually incompatible video and audio coding algorithms" of the means for recognizing and processing, and (d) the "universally compatible" "selective internal file format" or the reconfiguration means. (*Id.* at 17.) Additionally, Microsoft points out that for the elements of claim 1 expressed in "means-plus-function" format–in particular those for which the SMR details corresponding structures: the processor means, the means for recognizing and processing, and the reconfiguration means– the Shaws have not explained how the accused products contain structures which are the same or equivalent to the corresponding structures identified by the SM. (*Id.*) Microsoft contends that because the Plaintiffs bear the burden of establishing the presence of each

and every claim requirement in the accused products, the Plaintiffs failure of proof on these elements is fatal to their claims. (*Id.*)

In response to this argument, Plaintiffs contend that Microsoft is attempting to inappropriately shift its burden on summary judgment to the Plaintiffs. (Pls.' Br. at 5.) First, Plaintiffs suggest that Microsoft has not met its initial summary judgment burden in that Microsoft has failed to demonstrate that the record insufficiently supports an element essential to the Plaintiffs' case. (*Id.* at 5-6.) Second, Plaintiffs argue that because Microsoft has access to evidence, which could disprove elements of the Plaintiffs' claims, Microsoft may not properly put forward a "no evidence" motion but must put forward evidence negating an element of Plaintiffs' case for summary judgment. (*Id.* at 7.) In support of this argument, Plaintiffs quote *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986), for the proposition that "a defendant should be allowed to rely on an absence of proof to establish a right to summary judgment only where 'it is evident that the party seeking summary judgment against one who bears the burden of proof has no access to evidence of disproof.'" (*Id.*)

While it is true that a party may not support a motion for summary judgment with a conclusory assertion that a plaintiff has no evidence to support his case, a party may support a motion for summary judgment by pointing out that there is no evidence to support specific elements of the plaintiff's claim. *Celotex*, 477 U.S. at 322-323, 328. Moreover, a party's right to assert such a "no evidence" motion for summary judgment is not limited to circumstances in which "it is evident that the party seeking summary judgment against one who bears the burden of proof has no access to evidence of disproof." In *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), the Fifth Circuit referred to its view of summary judgment in *Fontenot* as "wrong-headed" in light of the

Supreme Court's summary judgment "trilogy," *Celotex*, 477 U.S. 317; *Anderson*, 477 U.S. 242; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. 574, and the plain language of Federal Rule of Civil Procedure 56. Furthermore, the Fifth Circuit made it clear the party moving for summary judgment is not required to "*negate* the elements of the nonmovant's case," but may "satisfy [its] burden under Celotex" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery." *See* 37 F.3d at 1075, 1076 n.16. Quoting from *Celotex*, 477 U.S. at 322, the Fifth Circuit emphasized that

> Rule 56 "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Id.* at 1075.

Hence, because Defendant Microsoft has asserted that there is no evidence as to the infringement of specific elements in claim 1 of Plaintiffs' patent, the Court concludes that Defendant Microsoft met its initial summary judgment burden in this regard. Accordingly, the burden shifts to Plaintiffs to show a genuine issue for trial as to whether the accused products have elements which read on the elements identified by Defendant Microsoft, and thus directly infringe the '038 patent. *See Warner-Jenkinson Co.*, 520 U.S. at 40 (identifying the determination of whether accused product "contain[s] elements that are identical or equivalent to each claimed element of the patented invention" as the "essential inquiry"). However, Plaintiffs have not even attempted to respond in substance to Defendant Microsoft's "no evidence" argument. Plaintiffs have only attempted to rebut the arguments presented by Microsoft to negate elements of the Plaintiffs' claims. To a limited extent, it appears that this rebuttal addresses Microsoft's "no evidence" argument. For example,

Plaintiffs present an argument that Microsoft's accused products check run-time status, and this argument could be applied to Microsoft's claim that Plaintiffs have no evidence that the accused products have elements which are the same or equivalent to the clock or clock cycles for the "continuous monitoring" by the input/output device of the '038 patent. (*See* Pls.' Br. at 12-13.) Even so, Plaintiffs' rebuttal does not appear to address the remaining aspects of Microsoft's "no evidence" argument. (*See id.* at 7-13.) Hence, Plaintiffs have failed to make an adequate showing as to their claims of direct infringement, and Plaintiffs have thereby also failed to make an adequate showing as to their claims of contributory and inducing infringement. *See Linear Tech. Corp.*, 379 F.3d at 1326 ("There can be no inducement or contributory infringement without an underlying act of direct infringement."). As such, Plaintiffs' claims cannot survive summary judgment.

Moreover, the Court is persuaded by arguments presented by Microsoft in an effort to negate elements of the Plaintiffs' claims. First, the Court is persuaded by Microsoft's contention that NetShow software and Windows Media software do not support two-way videoconferencing, as they must in order to infringe the '038 patent. Plaintiffs do not dispute that Netshow software and Windows Media software are not designed for two-way videoconferencing. Instead, Plaintiffs assert that the capability of this software for one-way delivery of multimedia could be manipulated into a two-way "communication method" involving a "15-20 second overall delay from recording to playback." (Pls.' Br. at 10-11.) As Microsoft points out, however, claim 1 requires that the "receiving and transmitting [of] video and audio information to and from a telecommunications network" be accomplished on a "real time basis." (SMR at 33; Reply at 8.) The SM construed "real time basis" to mean that the controller must be able to "present a live communication in which audio and video appears natural and uninterrupted from the perspective of the people using the claimed

invention." (SMR at 33.) The Court does not believe that a reasonable jury could find that a system creating a 15-20 second delay between communications would qualify as or be equivalent to one which provided "natural and uninterrupted" communication.[2]

Furthermore, the Court is persuaded that Microsoft's NetMeeting software does not control network bandwidth during videoconferencing in order to adjust to network conditions, as it must in order to infringe the '038 patent. Microsoft presents evidence that NetMeeting "operates according to users' network bandwidth settings . . . without regard to what network bandwidth actually is available during [a] videoconference." (Def. Microsoft's Mem. at 23 (citing Def. Microsoft's App. at 249-50).) Plaintiffs respond that "it is clear that [NetMeeting] determines the lowest bandwidth necessary to carry out the requested communication and sets the transmission speed to conduct the videoconference." (Pls.' Br. at 12.) However, in support of this statement, Plaintiffs cite to materials which reference only Microsoft's Netshow software, not the NetMeeting Software. Hence, Plaintiffs have failed to create a fact issue as to Microsoft's NetMeeting software in this regard.

## V.  Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motions for Summary Judgment. All of Plaintiffs claims are hereby DISMISSED with PREJUDICE.

**IT IS SO ORDERED.**

Signed this 30th day of August 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[2] Additionally, Microsoft presents evidence that in real time systems, which support two-way communication of audio and video, delays must be less than one second in order to "maintain the conversational, 'face-to-face' nature of the application." (Def. Microsoft's App. at 280.)